## Terminal Railroad Association v. Thomas B. Larkins.

1. PROXIMATE CAUSE—*how question of, determined.* Ordinarily, the relation of the alleged negligence to the injury complained of, whether proximate or remote, is a question for the jury; but when it clearly appears from the undisputed evidence that the injury cannot by any fair process of reasoning be attributed to such negligence, such question becomes one of law.

2. PROXIMATE CAUSE—*upon what, depends.* The defendant in an action for personal injuries may be held liable for consequences which might have been foreseen and expected as the result of its conduct; if, however, an intervening, independent efficient cause breaks the casual connection between the original wrong and the injury, such intervening cause then becomes the direct and immediate, that is, the proximate cause of the injury, and bars a recovery.

Action on the case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK; Judge, presiding. Heard in this court at the February term, 1903. Reversed with findings of fact. Opinion filed September 10, 1903. Rehearing denied March 10, 1904.

J. M. HAMILL, for appellant.

M. MILLARD and F. C. SMITH, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action on the case to recover damages for injuries received by appellee June 8, 1902, while in the employ of appellant as foreman of a switching crew. Issues are joined upon a single count in appellee's amended declaration, alleging negligence of appellant in the use of a defective freight car and that the injury was the result of such negligence. Trial in the City Court of East St. Louis resulted in a verdict and judgment for appellee, from which

the case is brought to this court by appeal. Numerous errors have been assigned and argued at length by both parties, but in the conclusions reached by the court, after a careful consideration of the entire record, it will not be necessary to discuss all the questions presented.

The business of appellant is that of transferring trains and cars across the river, into and about the yards, stations and depots of the different railroads terminating in the cities of St. Louis and East St. Louis. It has extensive switching yards in East St. Louis. At the time of the accident appellee was the foreman in charge of an engine and switching crew consisting of himself, an engineer, fireman, switch tender, pin puller, who uncoupled cars, and two fielders, for such services as the foreman directed. He was engaged in the separation and distribution to their several owners of a train or string of nine empty coal cars belonging to different railroad companies. The part of the yard involved by this operation consisted of six parallel tracks running north and south, in numerical order from the east, and numbered 23, 24, 25, 26, 27 and 28, respectively. At the north end these tracks are severally connected by a switch with a lead track, which from the north bears slightly to the west, crossing the tracks in the order given. Appellee received a train slip, showing the disposition to be made of the cars, and upon each marked the number of the track on which it was to be placed. Preparatory of the work to be done, the train was moved to a position on the lead north of the connecting tracks and switches to be used, the engine at the north end. From the south end of the train the cars numbered with the tracks on which they were to be placed, stood in the following order: B. & O. S. W., track 25, I. C., track 23, Vandalia, 2 cars, track 27, Southern, track 26, and others with which we are not now concerned. In his duty as foreman of the crew appellee gave position to the men and directed the movements of the engine. When all was in readiness, appellee took position at switch 23 for track on which the I. C. car was to go and placed Navarre, the

switch tender, at 25, the track for the B. & O. car. The fielders were elsewhere in the yards. Appellee then gave a "high-ball" signal to the engineer, which means to move the cars quickly and forcibly in order to give the car, when uncoupled, sufficient momentum to carry it from the lead track through the switch far enough to permit other cars on the lead to pass. While the cars were in motion under this signal, appellee gave the signal to slow up. This operation is commonly called "kicking" the cars. The pin puller first uncoupled the B. & O. car from the I. C. and when the B. & O. had separated from the I. C. a sufficient distance, he uncoupled the I. C., which likewise separated from the Vandalia. Success in the operation required appellee to throw switch 23 after the B. & O. had passed and thus divert the I. C. car to its destined track. But when the B. & O. and I. C. reached his position they were too nearly together to permit his moving the switch. He then signaled the engineer to "kick" the cars again and got upon the end of the moving I. C. car farthest from the B. & O. and rode until the two cars reached switch 25, and were moving in on track 25, when he jumped off the I. C. car and stepped upon and walked some distance on the lead track on which the engine and undetached cars were moving pursuant to the signal last given by him to the engineer. As was proper and required, the switchman at No. 25 opened the switch to track 25 for the B. & O. car, and as soon as the lead was cleared by it and the I. C., which were then running together, he closed the switch so that the cars pushed by the engine were kept on the lead track. While upon this track, as stated, the appellee was knocked down, run over, and received the injuries complained of.

Appellee contends that the B. & O. car was out of repair; that because of this defective condition it did not run freely, being so retarded in speed as to lose the required interval between it and the I. C. car moving under the same impulsion; that appellee had to abandon switch 23 and change the plan of operation, in doing which he went upon the track in front of the moving cars and was injured, all as a

direct, natural, proximate consequence of the defect in the car and the negligence of appellant which permitted its use. We are unable to so connect the negligence charged with the injury received, nor do we regard the evidence sufficient to sustain the verdict of a jury in favor of appellee's contention. Ordinarily, but not always, the relation of the alleged negligence to the injury complained of, whether proximate or remote, is a question for the jury; but when, as in this case, it clearly appears from the undisputed evidence, that the damages suffered, may not, by any fair process of reasoning, be attributed to the negligence charged, it becomes a question of law. As upon the question whether or not there is actionable negligence in a given case, the jury will not be permitted arbitrarily, or capriciously, to award damages not caused by the negligence charged. In all cases it is given to the courts to say whether under the evidence presented there is a question of fact for the jury to decide.

This case differs in several essential particulars from the case of C. & N. W. Ry. Co. v. Gillison, 173 Ill. 264, cited by appellee. In the Gillison case the train was divided by reason of the defective draw-bar, and to avoid a consequent collision of the two parts of the broken train, the plaintiff, in the line of duty, was *necessarily* in the position and engaged in the particular service required when the collision occurred by which he was injured. The parting of the draw-bar divided the train, and the coming together of the two sections, a probable, natural, almost inevitable consequence, caused the injury to the plaintiff. In connecting cause and consequence in the case before us, the most that can be said is that the defective car deranged the plan of operation in switching the cars, and by reason of that it became necessary to stop the engine and repeat the effort. Appellee was not required by anything that happened to go upon the track in front of the moving cars by which he was run down. Nor was there anything in apparent conditions to excuse his negligence in doing so. It does not require the citation of authority to support the proposition, that

the negligence complained of must be the proximate cause of the damages suffered. By that is meant, as we find it discussed in the text books and reported decisions, that the negligence must be connected, directly or indirectly, through a natural sequence of events with the injury sustained.

The defendant may be held liable for consequences which might have been foreseen and expected as the result of its conduct. Brown v. Craven, 175 Ill. 401. "If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, although his negligent act was not the nearest cause in order of time. The practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might follow." Am. Ex. Co. v. Risley, 179 Ill. 295. If an intervening, independent, efficient cause breaks the casual connection between the original wrong and the injury, such intervening cause then becomes the direct and immediate, that is, the proximate cause of the injury, and bars a recovery. Pullman Pal. Car Co. v. Laack, 143 Ill. 242.

Under the evidence in this case it must be held that the injuries suffered are due to the want of ordinary care in the appellee. There is no charge that appellant's servants, working with him at the time of the accident, were negligent or to blame; nor can there be. They did as he directed. The cars that ran over him were moving under his signal, and upon the track where, by his own directions, they should have been expected, notwithstanding the conditions which prevented the switching of the I. C. car onto track 23. Appellee was familiar with the yards, acquainted with the business, and must have known the risks incident thereto and the necessity for care and watchfulness to avoid injury. To one of his knowledge and experience the mishap in the movement of the cars was not calculated to

excite or confuse him in such degree as to excuse his apparent recklessness and oblivion to the danger of his position when injured. Surely, it must frequently happen in this highly dangerous occupation, that similar conditions arise, whereby a repetition of effort is required to accomplish the work proposed. Whether or not the car was defective or appellant negligent in that respect, would be a question within the province of the jury, if the right to recover depended upon the answer to that question alone. But, as already indicated, we are moved by the evidence to hold that the negligence alleged was not the proximate cause of the injury described, that the appellee was guilty of contributory negligence, and that the injury received was incidental to the service in which he assumed the risks.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

That the negligence alleged in the declaration was not the proximate cause of the injury complained of, that the plaintiff was guilty of negligence which contributed to the injury, and that the injury suffered was incident to the business in which the plaintiff was engaged, the risk of which he assumed.