## James Reddick, Administrator, v. General Chemical Company.

### Gen. No. 12,163.

1. SULPHURIC ACID—*extent of liability of shipper of, for injury suffered by third party in unloading.* A shipper of sulphuric acid is not an insurer of the safety of any person seeking to unload such acid; if such shipper has provided a well-known and reasonably safe way of unloading a car containing such acid, it has performed its duty.

2. NEGLIGENCE—*when not ground for recovery.* Where the negligence charged has become remote by the introduction of an intervening efficient cause, no recovery can be predicated thereon.

Action on the case for personal injuries. Error to the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed December 14, 1905.

BENSON LANDON, for appellant; WILLIAM S. FORREST and B. C. BACHRACH, of counsel.

CUSTER, GRIFFIN & CAMERON, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Walters brought an action against the General Chemical Company to recover damages for personal injuries. At the

close of the evidence for the plaintiff the court, on motion of the defendant, instructed the jury to find the defendant not guilty. From the judgment entered upon that verdict this writ of error was sued out. After the case was docketed in this court, Walters died and the administrator of his estate was substituted as plaintiff in error.

The defendant is a manufacturer of and a wholesale dealer in sulphuric acid, having its place of business at Hegswisch, Illinois. Its product is sent out in tank cars especially constructed for the shipment of sulphuric acid. The tank, which lies on and is fastened to a flat car, is similar to the oil tank cars in general use. It is domed in the center. The acid is run into the tank until it is nearly full. The dome is empty. The tank is of iron 1½ inches in thickness. In the dome are two openings, into each of which a nipple 2 inches in diameter is screwed. A coupling or iron pipe is screwed on over each nipple. In this coupling is screwed a bushing which reduces the opening to 1¼ inches in diameter. In this opening is screwed an iron plug, having a square projecting head. One of these openings is known as the air opening and the other as the acid opening. From the inner end of the acid opening a pipe extends down to the bottom of the tank. There is no interior pipe to the air opening. These openings are opposite each other on the dome. They are usually marked respectively "Air" and "Acid." These nipples are never taken out except to repair them or to replace them. In transportation, either from heat or from chemical action, gases are liable to be formed in the tank, thereby creating pressure. The tank is unloaded by first taking the plug out of the air opening. This relieves the pressure, if any, in the tank. The plug is then taken out of the acid opening and a pipe is attached to the coupling. This pipe runs into the storing reservoir. A pipe is then attached to the air opening, through which air is driven, and thus the acid is forced out of the tank without danger to the operator.

For six months before his injury Walters had been employed by the Grand Crossing Tack Company as helper to a

steamfitter. This company used large quantities of sulphuric acid in its business at Grand Crossing, Illinois. It bought the acid from the defendant in car lots, the delivery being made in cars such as has been described.

May 10, 1901, the Tack Company ordered a car of acid from the defendant, and a car, which the day before had withstood an internal pressure of 60 pounds to the square inch, was loaded and shipped that day, arriving at the works of the Tack Company on the morning of May 13, 1901. At noon of the last named day the yard foreman of the Tack Company, who had control of Walters, asked him where the steamfitter was. The reply was that he did not know. The foreman then said, "I have not got time to run around a half a day looking for him. There is a tank car of acid over there, and I want you to go up on the car. You will find a plug there in the dome of the car. Take that plug out and put a piece of nipple in there, an inch and a quarter nipple." Walters knew nothing about the unloading of acid cars. He did not know that there might be a pressure in the tank; nor was he aware that acid was a dangerous thing to handle. In obedience to the order, he went to the car and attempted to remove the plug from the acid nipple. While so doing he found that, instead of the plug yielding to the wrench, the nipple turned. After he had turned the nipple two quarter revolutions, it came out, and the acid, by reason of the interior pressure, followed, deluging him and burning him very severely. An examination showed that the threads in the dome in which that nipple was screwed, from long exposure to the action of the acid, were corroded and worn away, only a few sound threads remaining.

The declaration counted upon this defective condition of the nipple as ground of negligence upon the part of the defendant.

- Counsel for plaintiff in error argue that a small vent at the top of the dome would have prevented interior pressure, and thus made it safe to take out the acid plug first. The evidence does not show that such a vent was in use by any

one engaged in shipping sulphuric acid in similar cars. Further, the defendant was not an insurer of the safety of Walters or of that of any third person. If the defendant provided a well known and reasonably safe way of unloading this car, it performed the duty it owed Walters and the general public, and the absence of such a vent does not make it liable for damages in this case. C., R. I. & P. Ry. v. Lonergan, 118 Ill., 41.

The evidence as to whether these openings were marked "Air" and "Acid" respectively is conflicting. But as the absence of such marking is not charged as negligence, the question is not here in issue.

In October, 1902, the Tack Company paid Walters the sum of $4,000, and in consideration of this payment he agreed not to further prosecute that corporation.

There was no contract relation between Walters and the defendant. The right of recovery, if any exists, is based upon the common law duty which the manufacturer and distributer of an inherently dangerous substance owes to the public to exercise care commensurate with the danger in its distribution. The leading case upon this question is Thomas v. Winchester, 6 N. Y., 397, where a manufacturer of drugs labeled a poison as a harmless medicine. The package thus labeled was sold to a retail dealer, and by him to one who used it and was thereby injured. The court held the manufacturer liable in damages, saying that the duty of the defendant arose not from privity of contract, but out of the nature of its business and the danger to others from its mismanagement.

The evidence tends to prove that Walters at the time of the accident was absolutely ignorant of the conditions which exposed him to danger, and therefore he was not guilty of contributory negligence in the premises.

This accident did not happen while the car was on its way to the factory of the Tack Company. It had been delivered to that company and lay in its yards for some hours before Walters was injured. The defendant, to the knowledge of the Tack Company, had provided a safe way

to unload the car. Had the air plug been removed before the acid plug was touched, thus relieving the interior pressure, the taking out of the latter·plug, or the coming out of the nipple in which it was placed in the effort to remove the plug, would not have resulted in injury to Walters. This accident happened because an attempt was made to unload the car contrary to the safe and customary way and in a manner dangerous to the operator.

It is to be noted that had Walters succeeded in removing the acid plug instead of the acid nipple, he would have been deluged by the acid. In either case the danger was the same, differing in degree only.

The nearest efficient cause which is adequate to produce and does bring about an accident, is the proximate cause of that accident. Such new and independent cause supersedes prior causes and negligences, if they exist. The foreman of the Tack Company knew the safe and customary way of unloading this car. Instead of doing it or of superintending it himself, or of sending an experienced servant to do it, he ordered the deceased, a servant wholly ignorant in the premises, to unload the car. This unfortunate accident resulted from that order. Here is an intervening efficient cause which made the negligence of the defendant, if it was guilty of any negligence, remote and non-actionable. Pullman Palace Car Co. v. Laack, 143 Ill., 242.

The question of probable cause is usually one of fact, but where, as in this case, it clearly appears that the accident cannot be attributed reasonably to the negligence charged, it becomes one of law.

It follows that the learned trial judge was right in directing the jury to return a verdict for the defendant, and we therefore affirm the judgment of the Circuit Court.

*Affirmed.*