**Leroy Morck, Plaintiff-Appellant, v. Frank Nicosia, Individually, and d/b/a Capital Construction Co., Defendant-Appellee.**

Gen. No. 51,289.

First District, First Division.

January 29, 1968.

Epton, McCarthy, Bohling & Druth, of Chicago (Edward A. McCarthy, David S. Kreisman, and Alan R. Miller, of counsel), for appellant.

McKinley, Price & Fako, of Chicago (Paul E. Price, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Leroy Morck filed his complaint against Frank Nicosia, alleging a violation of the Structural Work Act, Ill Rev Stats 1965, ch 48, § 60 et seq. A motion to strike and

dismiss the second amended complaint was denied. An answer was filed and depositions of plaintiff and defendant were taken. Upon being assigned for trial, defendant moved for summary judgment, which motion was allowed. Plaintiff now prosecutes this appeal.

■ We note initially that there is no error in the procedure of entering a summary judgment after a motion to dismiss the complaint has been denied. Stanko v. Zilien, 33 Ill App2d 364, 179 NE2d 436 (1962).

Defendant's motion for summary judgment adopted by express reference the discovery depositions of both plaintiff and defendant. The facts, as they appear from those depositions, show that defendant was a general contractor in charge of the construction of an apartment building. Plaintiff was a carpenter employed by one of the defendant's subcontractors. At the time of the accident which gave rise to the instant law suit, he was working about 14½ feet above the ground on "the first floor subfloor which would be, actually, the ceiling of the first floor and it would be forming the floor of the second floor." Plaintiff was "leveling the joists . . . mak(ing) them the same height so that the floor would be perfectly straight." The building was 24 feet wide and the joists involved spanned from wall to wall. The flooring, which had already been installed, was about 1,500 feet of flat surface with no openings, voids or holes.

Joists are "leveled" by placing shims, or wedges, underneath them. This operation is performed by raising the end joist to the desired height. A string is stretched from this end joist to the other end of the building. Plaintiff would stand on the wall, which was eight inches wide, facing the center of the building. From a squatting position, he would insert a crowbar under each joist and raise it to the proper height. The joists had to be raised, on the average, about one-half inch. Plaintiff carried the wedges or shims in his nail apron and after raising the joist, he would select a proper wedge, insert it under the

joist and put in a retaining nail. He would then stand up and step over to the next joist, moving his tools with him. It was in making such a move to an adjacent joist that plaintiff's feet slipped out from under him and he fell to the ground.

Plaintiff's second amended complaint is in one count. It charges the defendant with willfully violating the Structural Work Act in that he failed to erect and provide a scaffolding for plaintiff to stand on while leveling joists. The actions of defendant, which the complaint alleges constituted the violations of the Act, are as follows:

"a. Willfully *failed to erect and construct a scaffold upon* which the said LEROY MORCK could work in a safe, suitable and proper manner, and willfully failed to erect, construct, place and operate the same for said LEROY MORCK to work upon, so as to give proper and adequate protection to the life and limb of the plaintiff working at said place, in violation of Section 60 of Chapter 48 of the Revised Statute (1957).

"b. Willfully *failed to erect and construct a scaffold* upon which said LEROY MORCK could work in a safe, suitable and proper manner, and willfully failed to erect, construct, place and operate the same for said LEROY MORCK to work upon so as to give proper and adequate protection to the life and limb of the plaintiff working at said place, in violation of Section 60 of Chapter 48 of the Revised Statute (1957).

"c. Willfully *failed to supply a scaffold* or support to said plaintiff to perform his work upon, and as a result there was created a dangerous, precarious and hazardous work condition.

"d. Willfully *failed to provide a safe place to work* for said plaintiff, which was hazardous and

329

dangerous without the erection of a scaffold or support.

"e. Willfully *failed to provide a handrail* or other reasonable means to prevent the plaintiff from falling from the dangerous, precarious and hazardous position required of him by the defendant in the construction of the building.

"f. Willfully *failed to comply with the custom and practice* of safety adopted in the Building Construction Industry to protect the plaintiff from falling from a high hazardous position.

"g. Willfully *failed to observe the safe rules of conduct in providing scaffolding,* ladders, supports, handrails or other contrivance to adequately protect the plaintiff from falling from great heights, to which height he was required to ascend in completion of the defendant's construction work.

"h. Willfully *failed to properly inspect* the area in which the plaintiff was required to work to *make certain that scaffolding,* supports, ladders or other contrivances *were provided* to insure the safety of the plaintiff.

"i. Willfully *invited the plaintiff to work* in an area which was imminently dangerous and unsafe.

"j. Willfully *invited the plaintiff to work* upon its building in hazardous weather conditions, whereby, as a result of inclement weather conditions ice and snow had formed on the joists, walls and other surfaces upon which the plaintiff was required to do his work, so that the danger to the plaintiff, in an already hazardous position was increased.

"k. Willfully *failed to comply with the custom and practice* of building industry *in providing a scaffolding or other safe place* upon which the plaintiff might stand while performing the functions required him by the defendant." (Emphasis Added.)

330

We read plaintiff's complaint as being based solely upon alleged violations of the Structural Work Act. In his brief filed in this court, plaintiff states that the case at bar is exclusively under that Act. It is not alleged that the permanent part of the building, upon which plaintiff was standing at the time the accident occurred, constituted a scaffold thereunder. See Bounougias v. Republic Steel Corp., 277 F2d 726 (7th Cir 1960) ; also Parizon v. Granite City Steel Co., 71 Ill App2d 53, 218 NE2d 27 (1966) holding that a permanent part of a structure is not to be treated as a scaffold. Language to the contrary in Louis v. Barenfanger, Fifth District, No. 66–61, September 14, 1966, was eliminated from the Opinion as modified on rehearing, 81 Ill App2d 104, 226 NE2d 85 (1967). But see also 87 ALR2d 977, § 6.

Furthermore, it is clear from the facts that there is no scaffold present in the instant case. The pleadings, however, are not framed to state a cause of action in common-law negligence for failure to provide plaintiff with a "safe place to work." Raxworthy v. Heisen, 274 Ill 398, 113 NE 699 (1916). Nevertheless, plaintiff takes the position that under the so-called "safe place to work" doctrine, defendant is required to provide scaffolding. This failure alone, contends plaintiff, is a willful violation of the Structural Work Act, because the Act embodies the safe place to work doctrine. We do not agree with this theory.

The safe place to work doctrine embodies many different facets and nuances which are not within the scope of this case. The controlling issue is limited to a determination of whether the Scaffold Act places a duty on the persons "in charge" of the construction to employ the use of scaffolding. We do not consider if the admitted failure to do so is negligence, but only whether this failure constitutes a violation of the Act. No prior Illinois case has ruled on this precise issue.

331

Section One of the Structural Work Act provides in relevant part as follows:

"(A)ll scaffolds . . . or other mechanical contrivances, *erected or constructed* . . . for the use in the erection . . . of any house, . . . or other structure, *shall be erected* and constructed in a safe, suitable and proper manner, and *shall be so erected* and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon." (Ill Rev Stats 1965, c 48, § 60, Emphasis added.)

■ We are fully aware that the Scaffold Act is to be given a liberal interpretation in accordance with its title which states:

"An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof."

Schultz v. Ericsson, 264 Ill 156, 106 NE 236 (1914) ; Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551 (1911), affirmed 228 US 680 (1913) ; Fetterman v. Production Steel Co., 4 Ill App2d 403, 124 NE2d 637 (1954). This rule of construction is also set forth in Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961). But the Gannon case also requires that we refrain from doing violence to the language of the statute by deleting or substituting words.

■ The operative words of the statute for determining the scope of the Act, are, "All scaffolds . . . erected . . . for use . . . shall be safe . . . as to give proper and adequate protection." We cannot construe this language as imposing a duty on the person in charge to

provide scaffolding on the construction site. However, once a scaffold or other mechanical contrivance is employed, the Act sets forth a standard of safety to which such scaffolds must comply.

Every case relied on by plaintiff involves fact situations where scaffolding of one type or another was used. There are three cases not involving the use of scaffolding which militate against plaintiff's position, all of which, he argues, are distinguishable. The first of these cases is Parizon v. Granite City Steel, supra. As pointed out above, the issue of whether a permanent part of the structure is a scaffold, is not present in the instant case.

The second case is Bradley v. Metropolitan Sanitary Dist. of Greater Chicago, 56 Ill App2d 482, 206 NE2d 276 (1965). In Bradley, a workman was killed as the result of a cave-in of an excavation for a "drop manhole." Plaintiff there argued that the failure of defendant to erect supports, protective sheets, stays, coverings and sidings, which would have prevented the soft mud, earth and clay from falling into the shaft-pit was a violation of the Scaffold Act. In that opinion, this court distinguished our Structural Work Act from a similar act in New York because our Act "app(lies) only when a scaffold is used." The opinion goes on to state:

> "Let us examine the Illinois Structural Work Act as it applies to the facts of the instant case.
>
> "Section 60 defines the standards for mechanical contrivances that are 'erected or constructed' for use in activities encompassed by the Act. It does not prescribe standards to determine when such contrivances must be used. This is illustrated by the language: (1) 'All scaffolds . . . or other mechanical contrivances *erected or constructed* . . .' and (2) the requirement that a safety rail for a scaffold '*swung or suspended* from an overhead support. . . .' (Emphasis supplied.) In the instant case there was

no scaffold, support or other mechanical contrivance. Even if the excavated hole was considered a 'structure' within the meaning of the Structural Work Act, there was no violation of any of the protective measures provided for in the statute." (P 486.)

Plaintiff argues that the above quote from Bradley is obiter dicta because the court concluded that the excavation site was not a "structure" within the Scaffold Act. Regardless of whether we consider the court's statement as obiter or an additional reason for its decision, we find the argument persuasive, and a proper interpretation of the Act.

The third case which does not involve use of any type of scaffolding is Thon v. Johnson, 30 Ill App2d 317, 174 NE 2d 400 (1961). Plaintiff was an electrician, who, in order to work on a particular switchbox, stood on a plywood form, covering a six to eight foot deep gap in a garage floor. "(W)e do not feel," concluded the court, "that the cement form upon which plaintiff stood in the case at bar can be considered to be a scaffold within the meaning of the statute. . . . (I)f the statute were construed so as to cover the concrete form involved in this case, such a construction of the statute would be equivalent to holding that each and every place where a workman chooses to stand thereby becomes a scaffold within the meaning of the statute. No authorities have been cited which would justify such a construction." (P 322.) On this reasoning the court reversed a judgment in plaintiff's favor.

In his reply brief, plaintiff here argues that it was not proposed to the court in Thon that the person in control had a duty to provide the workmen with something safer than the plywood floor on which to stand. It is, however, significant to us that the court found it necessary to define a scaffold before it would impose liability under the Structural Work Act. Having found no scaffolding being used, the court properly denied recovery. See also

334

Frick v. O'Hare-Chicago Corp., 70 Ill App2d 303, 217 NE2d 552 (1966), where this court reversed a summary judgment for the defendant only after concluding that the plank on which plaintiff was standing could constitute a scaffold, depending on the intention of the parties.

There are several additional cases which contain statements concerning the scope of the Scaffold Act. In Kobus v. Formfit, 35 Ill2d 533, 221 NE2d 633 (1966), the Supreme Court stated:

> "The Scaffold Act is a statutory enactment to protect those engaged in extra-hazardous work, and recognizes a duty upon certain categories of individuals to use specified safeguards and standards of safety in the erection of structures *where such work employs the use of scaffolds.*" (Emphasis added.) (P 537.)

In Miller v. DeWitt, 59 Ill App2d 38, 208 NE2d 249 (1965), the court as in Thon v. Johnson, supra, found it necessary to determine if certain temporary shorings were included under the phrase "other mechanical contrivances" in the Structural Work Act because, "the Act *relates to equipment used* in the erection or repair of buildings and other structures." (P 124, emphasis added.) This part of the Appellate Court Opinion was affirmed at 37 Ill2d 273, 226 NE2d 630 (1967). One further comment on the scope of the Act appears in Reed v. Johnson, 55 Ill App2d 67, 204 NE2d 136 (1965), wherein the court stated:

> "The Scaffold Act extends protection to persons employed or engaged on a ladder or a scaffold." (P 73.)

Plaintiff also argues that the case of Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134 (1958), creates a nondelegable duty upon the contractor creating liability

upon him when injuries occur on a construction site. This contention has been fully rejected in Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961). Secondly, as indicated above, we find the scope of the Structural Work Act limited to those situations where either a scaffold, hoist, crane, stay, ladder, support or other mechanical contrivance is used regardless of the defendant's ability to delegate his duty.

Finally, plaintiff relies on the case of Louis v. Barenfanger, 81 Ill App2d 104, 226 NE2d 85 (1967), which reversed an order of the trial court dismissing a third amended complaint. The complaint alleged that although defendant furnished a planking type scaffold for use on the construction site, he did not properly place that scaffold so as to give proper and adequate protection to the life and limb of the plaintiff. Defendant's motion to dismiss, of necessity, admitted that he furnished the scaffold and did not properly place it. The statute clearly provides that "all scaffolds . . . erected . . . shall be so erected and constructed, placed and operated as to give proper and adequate protection." Consequently, that court concluded that plaintiff stated a cause of action under the Structural Work Act. The factual situation in Barenfanger is clearly distinguishable from the instant case.

For the foregoing reasons, the order of the Circuit Court of Cook County entering summary judgment for defendant, is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.