Daniel **MADLER**, Plaintiff
and Appellant,

v.

**McKENZIE COUNTY**, Defendant
and Appellee.

Civ. No. 900335.

Supreme Court of North Dakota.

March 19, 1991.

Greenwood, Greenwood & Greenwood, P.C., Dickinson, for plaintiff and appellant; argued by Dann E. Greenwood.

Fleck, Mather & Strutz, Bismarck, for defendant and appellee; argued by Daniel L. Hovland.

LEVINE, Justice.

Daniel Madler appeals from a summary judgment dismissing his lawsuit for damages against McKenzie County. We reverse and remand for a trial on the merits.

Madler was injured when he fell 37 feet to the ground from a scaffold while working on a bridge construction project in McKenzie County. At the time of the accident, Madler was an employee of Edward H. Schwartz Construction, Inc. (Schwartz). Schwartz had contracted with the North Dakota Department of Transportation (Department) to construct the bridge. McKenzie County then executed a contract with the Department, agreeing to provide "[a]dequate engineering, supervision, and inspection" for the project and to maintain the bridge when the project was completed.

Following the accident, Madler received worker's compensation benefits. He then sued McKenzie County for damages, alleging that the worksite did not meet state and federal safety regulations that were incorporated into the bridge construction contracts. Madler contends that McKenzie County owed him a duty of care toward providing a safe workplace and that it breached that duty.

McKenzie County moved for summary judgment, asserting that it owed Madler no duty of care for his safety. In apparent agreement with McKenzie County's position, the district court granted the motion for summary judgment. On appeal, Madler asserts that the district court erred in granting the summary judgment dismissing the lawsuit. We agree.

Summary judgment is appropriate only if, after viewing the evidence most favorably to the party against whom summary judgment is sought, it appears that there is no genuine issue of any material fact and that the party seeking summary judgment is entitled to it as a matter of law. *Larson v. Baer*, 418 N.W.2d 282 (N.D.1988). Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts. *Garcia v. Overvold Motors, Inc.*, 351 N.W.2d 110 (N.D.1984).

■ To establish actionable negligence, the plaintiff must first show the existence of a duty by the defendant to protect the plaintiff from injury. *Layman v. Braunschweigische Maschinenbauanstalt*, 343 N.W.2d 334 (N.D.1983). The question of whether there is a duty is generally a preliminary question of law for the court to decide. *Barsness v. General Diesel & Equipment Company*, 383 N.W.2d 840 (N.D.1986). If, however, the existence of a duty depends upon factual determinations, the facts must be resolved by the trier of fact. *Rawlings v. Fruhwirth*, 455 N.W.2d 574 (N.D.1990).

On appeal, Madler argues that, based upon two independent theories of liability outlined in the Restatement (Second) of Torts, McKenzie County owed him a duty of care.

■ Madler asserts that the first source of the duty of care owed by McKenzie County is a failure to reasonably exercise the control it retained. Restatement (Second) of Torts § 414 (1965) describes this duty:

"*§ 414. Negligence in Exercising Control Retained by Employer*

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

As a general rule, an employer is not liable for the torts of an independent contractor. *Lumpkin v. Streifel*, 308 N.W.2d 878 (N.D. 1981). However, Section 414 of the Restatement states an exception to the general rule of employer non-liability and that section makes an employer liable for an independent contractor's acts on a job over which the employer has retained control. *Schlenk v. Northwestern Bell Telephone Co., Inc.*, 329 N.W.2d 605 (N.D.1983). Section 414 explains that the employer can be found liable, not vicariously for the acts of the contractor's employees, but directly for the employer's failure to exercise its retained control with reasonable care. *Peter-son v. City of Golden Valley*, 308 N.W.2d 550 (N.D.1981).

■ It appears well settled that employees of an independent contractor fall within the protection of Section 414 and that an employer of an independent contractor who retains control of part of the work owes a duty of care to the independent contractor's employees to exercise the retained control with reasonable care. *Donovan v. General Motors*, 762 F.2d 701 (8th Cir. 1985); *Jamison v. A.M. Byers Co.*, 330 F.2d 657 (3rd Cir.), *cert. denied*, 379 U.S. 839, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964); *Ackerman v. Gulf Oil Corp.*, 555 F.Supp. 93 (D.N.D.1982); *Haberer v. Village of Sauget*, 158 Ill.App.3d 313, 110 Ill.Dec. 628, 511 N.E.2d 805 (1987); *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987); *Corsetti v. Stone Co.*, 396 Mass. 1, 483 N.E.2d 793 (1985); *Moloso v. State*, 644 P.2d 205 (Alaska 1982); *Gulf States Utilities Co. v. Dryden*, 735 S.W.2d 263 (Tex. App.1987); *Hammond v. Bechtel Inc.*, 606 P.2d 1269 (Alaska 1980); *Pasko v. Commonwealth Edison Co.*, 14 Ill.App.3d 481, 302 N.E.2d 642 (1973); *Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 295 N.E.2d 41 (1973). We have found no contrary cases, and we agree with the foregoing authorities that employees of an independent contractor fall within the protection of Section 414.

The comments to Section 414 explain the circumstances under which one incurs a duty to others under this theory of tort liability:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative de-

tail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

In *Schlenk v. Northwestern Bell Telephone Co., Inc., supra,* we cited Section 414 and related it to contrasting facts. There, Northwestern Bell had hired an independent contractor to remove abandoned telephone lines. An employee of the independent contractor was seriously injured on the job when he became entangled in a "wire winder" machine. The employee sued Northwestern Bell for damages. We discussed the reasons why the principle stated in Section 414 did not apply:

"Bell did not provide Aerial with any written instructions or specifications relating to the details of how the telephone line dismantling was to be performed. It is also undisputed that no Bell employees were ever present at the job site while the work was in progress. Thus, it is evident that Bell exercised no actual control of the work involved in the instant case.

&ast; &ast; &ast; &ast; &ast; &ast;

"An employer who does not retain or actually exercise any control or supervision over a project or the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees.

&ast; &ast; &ast; &ast; &ast; &ast;

"The rights reserved to Bell under the provisions of the contract in the instant case did not give Bell any control or right to control the method or manner of performing the details of the work, but, rather, generally related to Bell's right to make certain that the results obtained conformed to the specifications and requirements of the contract. We believe the mere retention of supervisory controls of this nature is not sufficient to impose liability upon Bell.... Because these provisions of the contract did not shift control over the method of work to Bell, but were simply meant to guarantee that the final results were in accord with

Bell's plans, and because Bell exercised no actual control over the details of performing the work, § 414 of the Restatement is inapplicable in the instant case." (Citations omitted.) 329 N.W.2d at 612–613.

Madler asserts that McKenzie County retained the right to control the manner in which the bridge construction was done and that Schwartz was not entirely free to do the work in its own way. Madler argues that because of this retained control, McKenzie County incurred a duty of care toward him. To determine whether McKenzie County retained sufficient control of the work to subject itself to liability, we must examine the contract between McKenzie County and the Department and, to the extent incorporated therein, the contract between the Department and Schwartz. *See Schlenk v. Northwestern Bell Telephone Co., Inc., supra.*

▪ Interpretation of a contract is a question of law for the court to decide if the intent of the parties can be ascertained from the writing alone. *Zitzow v. Diederich,* 337 N.W.2d 799 (N.D.1983). If, however, a contract is ambiguous, extrinsic evidence can be used to clarify the intent of the parties. *Thompson v. Thompson,* 391 N.W.2d 608 (N.D.1986). If extrinsic evidence must be used, the parties' intent is a question of fact for the trier of fact. *Id.* A contract is ambiguous when rational arguments can be made for different positions about its meaning. *Graber v. Engstrom,* 384 N.W.2d 307 (N.D.1986). The determination of whether a contract is ambiguous is a question of law for the court to decide, *Johnson v. Arithson,* 417 N.W.2d 373 (N.D.1987) and it is therefore fully reviewable by this court on appeal.

The Standard Specifications for Road and Bridge Construction (Standard Specifications) were incorporated into the contract between Schwartz and the Department. The contract between McKenzie County and the Department provided that the project would be constructed according to the "standard specifications, design standards, and the special provisions as estab-

lished for this project." The following are provisions within these contracts and the Standard Specifications that are relevant to the question of retained control:

> "Adequate engineering, supervision, and inspection shall be provided by the County to the satisfaction of the Department.
>
>   *    *    *    *    *    *
>
> "The work shall be done pursuant to this contract and the laws of the state of North Dakota, under the direct supervision and to the satisfaction of the Department. . . .
>
> "The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the [State Highway Agency] contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job. . . .
>
> "The Engineer will have the authority to suspend the work wholly or in part for the Contractor's failure to correct conditions unsafe for workers. . . .
>
> "The contractor shall have on the Project at all times a competent Superintendent capable of reading and understanding the Plans and Specifications and experienced in the type of work being performed. The Superintendent shall receive instructions from the Engineer or authorized representative.
>
>   *    *    *    *    *    *
>
> "When the Contract specifies that construction be performed by using certain methods and equipment, those methods and equipment shall be used unless other methods and equipment are requested by the Contractor and authorized by the Engineer."

The contract language is unclear about the extent of the State's engineering and supervision responsibilities that McKenzie County assumed by agreeing to provide "[a]dequate engineering, supervision, and inspection" for the project. The contract contains other ambiguity. A rational argument could be made that, under the contract, McKenzie County retained only a general right to inspect and stop work that did not comply with the contract requirements. However, a rational argument could also be made that, under the contract, McKenzie County retained some control over the manner in which the work was to be performed, including the handling of safety at the worksite. We conclude that the written agreement is ambiguous about whether McKenzie County retained some degree of control over the manner in which the work was done so that Schwartz was not entirely free to do the work in its own way. The ambiguity about retained control under the contract raises a question of fact for the trier of fact.

■ In addition to the question of whether McKenzie County retained control under the contract, there is a question about whether it actually exercised control at the workplace. An employer who does not "retain or actually exercise any control or supervision over a project" should not be held liable under the principle stated in Section 414. *Schlenk, supra,* 329 N.W.2d at 612. Depositions and affidavits were submitted about whether McKenzie County actually exercised control at the workplace during performance of the contract.

Michael Dollinger, the construction inspector employed by McKenzie County on the project, testified by deposition. He stated that he was responsible for filling out the daily inspection report and that "almost daily" he was at the construction site for "part of the day."

Doug Schmidt, a construction worker employed by Schwartz on the project, submitted an affidavit in which he stated that Dollinger was present at the worksite every day. He also stated:

> "[I]t was Mike Dollinger who was in charge at the site. He was pretty much 'calling the shots'. I have specific recollection that at various times he directed how he wanted certain things done; and we did as he requested."

Schmidt also stated in his affidavit that Dollinger had made comments to the effect that Schwartz was using "inadequate safe-

ty precautions" and that "someone's going to get hurt."

Madler submitted an affidavit opposing the summary judgment motion, in which he stated that from his observations at the job site, it was apparent that Dollinger "was very much involved in the inspection and supervision of the project work."

If McKenzie County exercised some control over the manner in which the contractor's work was being performed or provided supervision at the worksite so that Schwartz was not entirely free to do the work in its own way, then McKenzie County incurred a duty of care toward Madler under the principle stated in Section 414. This is a factual question about which reasonable persons could differ, and, therefore, it should be submitted to the jury. *Barsness v. General Diesel & Equipment Co., supra.*

As an independent ground of liability, Madler asserts that McKenzie County incurred a duty of care toward him under another principle outlined in Restatement (Second) of Torts § 324A (1965):

"*§ 324 A. Liability to Third Person for Negligent Performance of Undertaking*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Patch v. Sebelius,* 349 N.W.2d 637 (N.D.1984), we held that a contractor, who was constructing new lanes on an existing highway, incurred a duty to the public, using the principles enunciated in Section 324A, to exercise reasonable care in performing his contract. The United States Court of Appeals, Eighth Circuit, in *Weber v. Towner County,* 565 F.2d 1001 (8th Cir. 1977), applying North Dakota law and citing Section 324A of the Restatement, concluded that a county which had undertaken to repair township roads may have incurred liability by failing to exercise due care in repairing a washout and by failing to provide adequate warning signs of the defective road condition. The court held that summary judgment had been improvidently granted in favor of the defendant and remanded the case for a jury trial.

This case is analogous to *Moloso v. State, supra,* where the Supreme Court of Alaska concluded that, under both Section 414 and Section 324A of the Restatement (Second) of Torts, the plaintiff had raised genuine issues of fact for jury determination of liability. In *Moloso,* two construction workers were killed while working on a state highway project. The workers were employed by a construction company that had contracted to do the work for the State of Alaska. The estates of the deceased workers brought wrongful death actions against the State,[1] alleging several grounds of liability, among them that the State had breached its duty of care to the deceased workers by failing to exercise reasonable care of retained control of the work, citing Section 414, and by breaching an assumed duty of care toward the workers, citing Section 324A of the Restatement. The plaintiffs asserted that the State had voluntarily assumed the duty of inspecting the work area for dangerous rock and had failed to discharge that duty with reasonable care. The Alaska Supreme Court noted the analytical similarity

---

**1.** Tort actions against the State of Alaska are statutorily authorized. *City of Kotzebue v. McLean,* 702 P.2d 1309 (Alaska 1985). A majority of the North Dakota Supreme Court believes that the State of North Dakota enjoys sovereign immunity which only the Legislature can modi-

fy. *E.g., Leadbetter v. Rose,* 467 N.W.2d 431 (N.D.1991). However, the State's immunity is not an issue in this case, because the action was filed against McKenzie County as the sole defendant.

between these two theories of liability. The court concluded that if the State had retained the right to direct the manner of the independent contractor's performance or had assumed affirmative duties with respect to the safety of the workplace the State could be subject to liability, citing Section 414 or Section 324A, respectively. The court concluded that the question of whether the State had retained sufficient control to incur a duty was a question of fact for the jury. The court also found that a jury question had been properly raised as to whether the State could be held liable by having assumed affirmative duties with respect to safety. The court reversed the directed verdict in favor of the State and remanded for a jury trial.

We conclude that Madler has also raised genuine issues of fact for the jury to decide whether McKenzie County incurred a duty to Madler. If, in undertaking its contractual duties with the State, McKenzie County assumed involvement in providing for safe conditions at the workplace, it may have incurred a duty to Madler to exercise reasonable care for his safety. The scope or extent of McKenzie County's undertaking is a question of fact for the jury. *Santillo v. Chambersburg Engineering Co.*, 603 F.Supp. 211 (E.D.Pa.1985).

█ McKenzie County asserts that Madler's cause of action is precluded by Section 107.05(E) of the Standard Specifications which forbids the creation of third party beneficiaries under the contract:

"*E. Responsibility for Damage Claims.*

"It is specifically agreed between the parties executing the Contract that it is *not* intended by any of the provisions of any part of the Contract to create in the public or any member thereof a third-party beneficiary thereunder, or to authorize anyone to maintain any action for personal injuries, death, or property damage pursuant to or arising out of the terms or provisions of the Contract."

This argument by McKenzie County misreads the contours of Madler's lawsuit. Madler's action against McKenzie County is based upon tort, not contract. Because

it is not brought under the contract, it is unnecessary that Madler have privity of contract with McKenzie County. *Layman v. Braunschweigische Maschinenbauanstalt*, 343 N.W.2d 334, 341 (N.D.1983). While a mere breach of contract does not, by itself, furnish a basis for liability in tort for negligence, a breach of contract may involve negligent conduct, or even absent a breach of contract, there may be tort liability resulting from negligence occurring in the performance of the contract. *Id.*

Illustrative of the point we seek to make is *Caldwell v. Bechtel, Inc.*, 631 F.2d 989 (D.C.Cir.1980), in which an injured worker of an independent contractor sued a consultant engineering firm for breaching a duty to protect him against unreasonable risk of harm at the workplace. The worker's employer had contracted with a metropolitan governmental authority to construct tunnels in a subway system. The defendant engineering firm had contracted with the governmental authority to provide safety engineering services. The trial court concluded that the engineering firm owed no contractual duty to the injured worker under a third party beneficiary theory and therefore the firm could not be held accountable to the plaintiff for any alleged breach of its contractual agreement with the governmental authority. The court of appeals disagreed with the trial court's analysis:

"It has been many years since courts required privity of contract between the plaintiff and defendant before assessing tort liability, yet Bechtel would return us to that distant day.

\* \* \* \* \* \*

"While in contract law, only one to whom the contract specifies that a duty be rendered will have a cause of action for its breach, in tort law, society, not the contract, specifies to whom the duty is owed, and this has traditionally been the foreseeable plaintiff.

\* \* \* \* \* \*

"Dean Prosser expressed the relationship in this terse fashion:

"[B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person." 631 F.2d at 997–998. [Quoting W. Prosser, *Handbook of the Law of Torts*, § 93 at 622 (4th ed. 1971)].

We reject McKenzie County's attempt to shield itself from this lawsuit under the provisions of the contract. We conclude that the district court erred in granting McKenzie County's motion for a summary judgment dismissal on the ground that, as a matter of law, McKenzie County owed no duty to the plaintiff. Madler has raised genuine issues of fact regarding potential liability, entitling him to a jury trial.

The summary judgment dismissing Madler's action against McKenzie County is reversed, and the case is remanded for trial on the merits.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.