Robert OLSON and Jan
Olson, Appellants,

v.

PENNZOIL COMPANY, Appellee.

PENNZOIL COMPANY,
Defendant/Third–
Party Plaintiff,

v.

SUN WELL SERVICE, INC.,
Third–Party Defendant.

No. 91–1173.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1991.

Decided Sept. 5, 1991.

Rehearing Denied Oct. 4, 1991.

Paul Jacobson, Williston, N.D., for appellants.

Randall J. Bakke, Bismarck, N.D., for appellee.

Before LAY, Chief Judge, RONEY,[*] Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Robert and Janet Olson appeal from the district court's[1] grant of summary judgment for Pennzoil Company. We affirm.

## I.

In this diversity case, Robert Olson, an employee of Northern Tubing Testers (Northern), was injured while testing tubing at an oil well located on a leasehold in North Dakota owned by Pennzoil. Sun Well Service, Inc. (Sun Well) was servicing the oil well, and it provided all of the rig equipment there in use. Northern provided all of the equipment that was used to test the tubing.

Pennzoil had contracted with Northern directly to provide the testing. Pennzoil requested that Northern conduct the testing "above the slips" and that it bring along an "extra hand" to perform the work.

The testing procedure employed in this case involved injecting water into the tubing under 8,000 pounds of pressure to determine whether any holes or leaks existed in the tubing. Olson's job was to place a testing tool in the top end of the tubing and then signal his fellow worker to begin pressurizing the tubing.

There are two basic positions from which the testing procedure can be performed, above or below the slips. The "slips" are the devices on the floor of the derrick that hold the tubing (or pipe string, as it is sometimes referred to) in place during well-servicing operations.

Testing above the girts can be performed at one of three locations: the rod basket, which is located towards the top of the derrick; the tubing board, which is located at a point approximately midway in the derrick; and from the girts, or crossbars, of the derrick superstructure. A position on the girts is the most dangerous of the three locations, and the accident would not have occurred had Olson done the testing from either the rod basket or the tubing board.

Olson positioned himself on the girts at a point approximately sixty feet above the ground. He testified in his deposition that because the tubing was being tested in sixty-foot lengths, it would not have been possible for him to have inserted the testing tool into the tubing from a position in the rod basket or on the tubing board, and that in any event there was no room for him on the tubing board inasmuch as it was

[*] The Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

1. The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota.

already occupied by one of Sun Well's employees.

To protect himself from falling, Olson fastened a safety line around his body and tied it to the derrick. As the testing was being performed, a hole the diameter of a .22 caliber bullet developed in a section of the tubing even with Olson's body. Olson was struck in the leg by the highly pressured escaping jet of water, lost his footing on the girts, and suffered an injury to his back while being twisted about in the safety harness by the force of the impact.

No Pennzoil employees were present at any time during the testing on the day of the accident.

Olson argues that the trial court erred in ruling that Pennzoil was not liable on any theory for Olson's injuries.

## II.

Summary judgment is proper when there is no genuine issue of material fact. Fed. R.Civ.P. 56(c). The moving party bears the burden of demonstrating that "the record does not disclose a genuine dispute as to a material fact." *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273 (8th Cir.1988). If the moving party meets its initial burden, the non-moving party must then produce specific evidence to demonstrate genuine issues for trial. *Id.* at 273–74; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). If the non-moving party fails to produce such evidence, summary judgment is proper. *City of Mt. Pleasant,* 838 F.2d at 274. The same standard is applied on appeal. *Meyer v. Barnes,* 867 F.2d 464, 466 (8th Cir.1989).

## III.

■■ Olson first argues that Pennzoil is directly liable for his injuries. Under North Dakota law, and as a general rule, an employer is not liable for the torts of an independent contractor, *Lumpkin v. Streifel,* 308 N.W.2d 878 (N.D.1981), except in those situations in which an employer retains control over the work to be performed. *Schlenk v. Northwestern Bell*

*Tel. Co.,* 329 N.W.2d 605 (N.D.1983); Restatement (Second) of Torts § 414 (1965). If this exception applies, the employer may be held liable directly, not merely vicariously, for its failure to exercise the retained control with reasonable care. *Peterson v. City of Golden Valley,* 308 N.W.2d 550 (N.D.1981). Employees of an independent contractor fall within the protection of Section 414. *Madler v. McKenzie County,* 467 N.W.2d 709, 711 (N.D.1991); *Donovan v. General Motors,* 762 F.2d 701 (8th Cir. 1985).

The threshold inquiry, therefore, is whether Pennzoil retained control over the work in question.

Section 414 provides:

One who entrusts work to an independent contractor, but who retains control of any part of the work is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). Comment C explains that "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." In a recent decision, the North Dakota Supreme Court, addressing the amount of retained or exercised control necessary to invoke Section 414, stated:

" '[a]n employer who does not retain or actually exercise any control over a project of the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees.' "

*Madler,* 467 N.W.2d at 712 (*quoting Schlenk v. Northwestern Bell Tel. Co.,* 329 N.W.2d 605, 612 (N.D.1983)).

■ Olson asserts that Pennzoil retained or exerted control over the work in the following ways. First, Olson argues that since Pennzoil requested that the testing be done above the slips, it was in fact retaining control over the testing. We reject this argument. Testing above the slips is a

common procedure in the area in question. Pennzoil did not retain control of any of the work, as Section 414 requires. Rather, it contracted to have the work done in the customary manner and was concerned only with the final product. As succinctly stated by the district court: "Pennzoil asked for it. Northern agreed to it. A contract to do it was therefore executed." *Olson v. Pennzoil,* No. 88–225 (D.N.D. Dec. 3, 1990) (Memorandum and Order granting summary judgment).

Second, Olson claims that because Pennzoil requested that an extra hand be used for the testing, it retained control over the work. Olson's argument is that since a Sun Well employee was working in the tubing area, Pennzoil's request that Northern bring along an extra hand (Olson) amounted to a direction that the extra hand be placed in the girts, the most dangerous location. We also reject this contention. Pennzoil's request for an extra hand does not rise to the level of controlling the manner and method in which the testing was to be performed. There is no evidence that Pennzoil directed the extra hand to work from the girts, rather than the other two areas above the slips. No written specifications detailed the manner in which the testing was to be performed. No Pennzoil employees supervised the testing, nor did any have a responsibility to do so. Olson received instructions on the tubing testing only from his own employer, Northern. Because Pennzoil did not retain control over the testing procedure, we find that Section 414 is inapplicable to these facts.

Next, Olson argues that Pennzoil is vicariously liable for his injuries. We disagree.

■ Sections 416 and 427 of the Restatement (Second) of Torts provide that an employer who hires an independent contractor to perform dangerous work can be held liable for the independent contractor's negligence that causes injury to a third person. *Ackerman v. Gulf Oil Corp.,* 555 F.Supp. 93, 95 (D.N.D.1982) (applying North Dakota law). Employees of the independent contractor, however, are not "third parties" within the protection of these sections. *Id.* at 95; *see also Vagle v. Pickands Mather & Co.,* 611 F.2d 1212 (8th Cir.1979) (reaching the same conclusion under Minnesota law).

■ Olson argues that he is a third party to the relationship between Sun Well and Pennzoil and is therefore entitled to the protection afforded by Sections 416 and 427. This argument fails, however, because there is no evidence that Sun Well was either engaged in a dangerous activity or negligent in performing its duties. Indeed, we agree with the district court that the evidence suggests that Northern's conduct was the cause of Olson's injuries. Thus, we find Sections 416 and 427 inapplicable under these facts.

■ Finally, Olson asserts that Pennzoil can be held strictly liable because it carried on an abnormally dangerous activity. Restatement (Second) of Torts § 519 (1965). As discussed above, we find that Pennzoil did not retain or exercise any control over the tubing testing. Because Pennzoil did not "carry on" an abnormally dangerous activity, it cannot be held strictly liable under Section 519.

The district court's judgment is affirmed.