**Daniel MADLER, Plaintiff and Appellant,**

v.

**McKENZIE COUNTY, Defendant and Appellee.**

**Civ. No. 920028.**

Supreme Court of North Dakota.

Feb. 23, 1993.

Dann E. Greenwood (argued), of Greenwood, Greenwood, Greenwood, Selinger & Ramsey, Dickinson, for plaintiff and appellant.

Daniel L. Hovland (argued) and DeeNelle L. Ruud (no appearance), of Fleck, Mather & Strutz, Bismarck, for defendant and appellee.

LEVINE, Justice.

Daniel Madler appeals from a district court judgment dismissing his action against McKenzie County. We affirm.

The North Dakota Department of Transportation [DOT] entered into an agreement with the Federal Highway Administration [FHWA] for federal funding of a bridge construction project in McKenzie County. DOT contracted with Edward H. Schwartz Construction [Schwartz] to construct the bridge. DOT then contracted with McKenzie County to provide "[a]dequate engineering, supervision, and inspection" for the project and to maintain the bridge after completion of construction.

Madler was employed by Schwartz on the construction project. While working on scaffolding on the outboard side of the partially constructed bridge, Madler was seriously injured when he lost his balance and fell 37 feet to the ground below. There were no guardrails, safety nets or safety lines in use on the project.

Madler sued the County,[1] alleging that the County had breached a duty to ensure that Madler was provided a safe workplace. Madler further alleged that the scaffold arrangement used at the worksite violated state and federal safety regulations.

The County moved for summary judgment, asserting that it owed no duty of care for Madler's safety. The district court entered summary judgment dismissing Madler's claims. We reversed on ap-

---

1. Because Madler sued only the County, DOT's immunity from suit under the doctrine of sovereign immunity is not at issue. *See Madler v. McKenzie County,* 467 N.W.2d 709, 714 n. 1 (N.D.1991). Schwartz enjoys immunity under the Workers' Compensation Act. *See* Section 65–04–28, N.D.C.C. Madler has received substantial workers' compensation benefits.

peal, holding that preliminary material issues of fact existed on whether the County owed a duty of care to Madler under Sections 324A and 414 of the Restatement (Second) of Torts. *See Madler v. McKenzie County*, 467 N.W.2d 709 (N.D.1991) [*Madler I* ].

On remand, Madler argued that a newly discovered federal regulation, 23 C.F.R. § 635.105(d), imposed a duty of care upon the County, as a matter of law. The trial court, however, refused to rule that regulation created a duty, as a matter of law. The jury found that the County was not negligent. Judgment was entered dismissing Madler's claims, and he appealed.

Although Madler raises numerous issues on appeal,[2] we find it necessary to address only three:

I.  Did the trial court err in refusing to rule that the County had a duty, as a matter of law, to provide for Madler's safety?

II.  Did the trial court err in allowing representatives of the County and DOT to testify about their understanding of the allocation of safety duties under the various contracts, and about custom and usage in such contracts?

III.  Did the trial court's instructions adequately apprise the jury of the applicable law?

I

Madler asserts that the trial court erred in refusing to rule that the County had a duty, as a matter of law, to provide for Madler's safety.

In *Madler I*, we held that Madler had raised material issues of fact on whether the County incurred a duty to him by exercising retained control over the project under Section 414 of the Restatement (Second) of Torts, and by undertaking to render services to another under Section 324A of the Restatement (Second) of Torts.[3] We concluded that, under both sections, the existence of a duty was dependent upon a determination of the nature and extent of the responsibilities undertaken by the County in its contract with DOT. Because the contract was ambiguous, resolution of

---

**2.**  We have previously cautioned against a "shotgun" approach to framing the issues on appeal. *See Schumacher v. Schumacher*, 469 N.W.2d 793, 797 (N.D.1991).

**3.**  The Restatement sections provide:

"§ 414. Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

"§ 324 A. Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Madler I, supra*, 467 N.W.2d at 714, we discussed the County's duty under Section 414, concluding:

"If McKenzie County exercised some control over the manner in which the contractor's work was being performed or provided supervision at the worksite so that Schwartz was not entirely free to do the work in its own way, then McKenzie County incurred a duty of care toward Madler under the principle stated in Section 414. This is a factual question about which reasonable persons could differ, and, therefore, it should be submitted to the jury."

We also addressed the County's duty under Section 324A in *Madler I, supra*, 467 N.W.2d at 715:

"We conclude that Madler has also raised genuine issues of fact for the jury to decide whether McKenzie County incurred a duty to Madler. If, in undertaking its contractual duties with the State, McKenzie County assumed involvement in providing for safe conditions at the workplace, it may have incurred a duty to Madler to exercise reasonable care for his safety. The scope or extent of McKenzie County's undertaking is a question of fact for the jury."

the parties' intent was a question of fact for the jury. *Madler I, supra,* 467 N.W.2d at 713. Accordingly, we remanded for trial.

Upon remand, Madler requested that the trial court rule that the County had a duty, as a matter of law. The basis of Madler's request was a newly discovered federal regulation,[4] 23 C.F.R. § 635.105, which, he argued, required the County to be "in responsible charge and direct control of the project at all times." The trial court refused to find a duty, as a matter of law, and submitted the issue to the jury.

Madler asserts on appeal that the federal regulation required the County to be in "responsible charge and direct control" of the bridge construction project and, therefore, created a duty, as a matter of law, under Section 414 of the Restatement. In essence, Madler argues that the federal regulation establishes that the County retained control of the work, thereby answering one of the unresolved fact questions recognized in *Madler I.*

■ Although Madler seeks to focus upon one phrase in subsection (d) of 23 C.F.R. § 635.105, a review of all relevant portions of the regulation is necessary to its proper construction. We rely upon the principles of statutory construction when interpreting administrative rules and regu-

lations. *See Gofor Oil, Inc. v. State,* 427 N.W.2d 104, 108 (N.D.1988). Statutes, rules and regulations must be construed as a whole to determine their intent, deriving that intent by comparing every section as a part of a whole. *See, e.g., Johnson v. North Dakota Workers' Compensation Bureau,* 484 N.W.2d 292, 295 (N.D.1992).

■ At the time this bridge was built,[5] 23 C.F.R. § 635.105 provided, in pertinent part:

"§ 635.105 Supervising agency.

"(a) The State highway agency has responsibility for the construction of all Federal-aid projects, and is not relieved of such responsibility by authorizing performance of the work by or under the supervision of a county, city, or other local public agency. The State highway agency will be responsible for insuring that such projects receive the same degree of supervision and inspection as a project constructed under a contract let and directly supervised by that agency and that the project is completed in conformity with approved plans and specifications.

"(b) When a project is not located on a highway system over which the State highway agency has legal jurisdiction, or when other special conditions warrant, *the State highway agency may arrange*

---

4. The federal regulation was not previously raised in the trial court or on the first appeal.

5. 23 C.F.R. § 635.105 has since been amended, and now provides:

"(a) The SHA [state highway agency] has responsibility for the construction of all Federal-aid projects, and is not relieved of such responsibility by authorizing performance of the work by a local public agency or other Federal agency. The SHA shall be responsible for insuring that such projects receive adequate supervision and inspection to insure that projects are completed in conformance with approved plans and specifications.

"(b) Although the SHA may employ a consultant to provide construction engineering services, such as inspection or survey work on a project, the SHA shall provide a full-time employed State engineer to be in responsible charge of the project.

"(c) When a project is located on a street or highway over which the SHA does not have legal jurisdiction, or when special conditions

warrant, the SHA, while not relieved of overall project responsibility, may arrange for the local public agency having jurisdiction over such street or highway to perform the work with its own forces or by contract; provided the following conditions are met and the Division Administrator approves the arrangements in advance.

"(1) In the case of force account work, there is full compliance with subpart B of this part.

"(2) When the work is to be performed under a contract awarded by a local public agency, all Federal requirements including those prescribed in this subpart shall be met.

"(3) The local public agency is adequately staffed and suitably equipped to undertake and satisfactorily complete the work; and

"(4) In those instances where a local public agency elects to use consultants for construction engineering services, the local public agency shall provide a full-time employee of the agency to be in responsible charge of the project."

*for a local public agency* having jurisdiction over such streets or highways *to perform the work with its own forces, or to let a contract therefor,* provided the division administrator approves such proposed arrangements in advance and provided all the following conditions are met:

"(1) There is an agreement between the State highway agency and the local public agency setting forth the conditions under which the project will be constructed. The agreement shall provide that construction work performed by or under the supervision of a local public agency will be subject to inspection at all times by the State highway agency and the FHWA.

"(2) The State highway agency certifies that the work performed by the local public agency is cost effective.

"(3) The local public agency is paying part of the cost of the work or has other special interest therein.

"(4) The local public agency is adequately staffed and suitably equipped to undertake and satisfactorily complete the work.

"(5) In the case of force account work, there is full compliance with Subpart B of this part.

"(c) When the work is to be performed under a contract awarded by a local public agency, all Federal requirements including those prescribed in this subpart shall be met.

"(d) Although the State highway agency may employ a consultant to provide construction engineering services, such as inspection or survey work on a project, *the State highway agency shall provide a full-time State-employed engineer to be in responsible charge and direct control of the project at all times. In those instances where a city or county can justify the use of consultants for these services, the city or county shall have a similar duty.* The State highway agency and any such city or county shall not be relieved of its responsibilities under Federal law and the regulations in the event it utilizes the services of an engineering organization." [Emphasis added].

We do not agree with Madler's assertion that subsection (d) creates a duty, as a matter of law, on the County under the facts of this case. Subsection (d) does suggest that, under certain circumstances, the County may be required to provide a full-time engineer to be in "responsible charge and direct control" of a project. However, when read within the context of the entire regulation, we believe that provision applies only when the County performs the work itself or lets the contract for the project. Subsection (b) clarifies that, when the project is not located on the state highway system, the State may arrange for "a local public agency ... to perform the work with its own forces, or to let a contract therefor," and subsection (c) provides that all federal requirements must be met "[w]hen the work is to be performed under a contract awarded by a local public agency." We construe the regulation to require the State or local agency which actually performs the work or lets the contract for the project to provide a full-time engineer to be in charge and control of the project.

In this case, the County did not perform the work itself or let the contract for the project. DOT entered into the contract with Schwartz to build the bridge. The County's involvement came after-the-fact, in a subsequent contract to provide engineering, supervision and inspection of the project. At best, this regulation created a nondelegable duty upon the state contracting agency, in this case, DOT. It created no duty upon the County.

█ Furthermore, we do not read the language "in responsible charge and direct control" as broadly as urged by Madler. Madler argues that an entity, "in responsible charge and direct control" under the regulation, would automatically satisfy the "retained control" element of Section 414 of the Restatement. We disagree.

In *Madler I, supra,* 467 N.W.2d at 711–712, we outlined the contours of the "retained control" requirement of Section 414, quoting the following language from Comment c to Section 414 and from *Schlenk v.*

*Northwestern Bell Telephone Co.,* 329 N.W.2d 605 (N.D.1983):

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Comment c to § 414 of the Restatement (Second) of Torts.

> "An employer who does not retain or actually exercise any control or supervision over a project or the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees....

> "The rights reserved to Bell under the provisions of the contract in the instant case did not give Bell any control or right to control the method or manner of performing the details of the work, but, rather, generally related to Bell's right to make certain that the results obtained conformed to the specifications and requirements of the contract. We believe the mere retention of supervisory controls of this nature is not sufficient to impose liability upon Bell.... Because these provisions of the contract did not shift control over the method of work to Bell, but were simply meant to guarantee that the final results were in accord with Bell's plans, and because Bell exercised no actual control over the details of performing the work, § 414 of the Restatement is inapplicable in the instant case...." *Schlenk, supra,* 329 N.W.2d at 612–613 (citations omitted).

The language, "in responsible charge and direct control" in subsection (d), must be read in context with the other provisions of 23 C.F.R. § 635.105. Subsection (a) indicates that the supervision and inspection contemplated under the regulation extends only to "insuring ... that the project is completed in conformity with approved plans and specifications." We do not believe the intent of the regulation is to require the contracting public agency to provide a full-time engineer to act as a construction foreman, specifying the method of work and operative detail on each aspect of the project. We conclude that the requirements of 23 C.F.R. § 635.105 do not, standing alone, satisfy the "retained control" element of Section 414 of the Restatement.

We conclude that the trial court did not err in refusing to rule that the County had a duty, as a matter of law, to provide for Madler's safety.

## II

Madler asserts that the trial court erroneously allowed representatives of the County and DOT to testify as to their interpretations or opinions of state or federal law and as to custom and usage which was contrary to or inconsistent with state or federal law. The County replies that Madler is mischaracterizing the witnesses' testimony, and that they testified only about their understanding of the allocation of safety duties under the contract provisions, and about custom and usage that was not inconsistent with the relevant provisions of law.

Much of the basis for Madler's assertion is his related argument that under 23 C.F.R. § 635.105, the County had a duty, as a matter of law, to provide for Madler's safety. Thus, Madler argues that *any* testimony inconsistent with such a duty was inadmissible. As previously discussed, Madler has misread the federal regulation. It does not create a duty, as a matter of law, upon the County.

As we recognized in *Madler I, supra,* 467 N.W.2d at 713, any duty upon the County to provide for Madler's safety

arises solely from the ambiguous provisions of the various contracts. If a contract is ambiguous, extrinsic evidence is admissible to clarify the intent of the parties. *E.g., Williston Education Association v. Williston Public School District No. 1*, 483 N.W.2d 567, 570 (N.D.1992); *Minex Resources, Inc. v. Morland*, 467 N.W.2d 691, 696 (N.D.1991). In addition, evidence of custom and usage is admissible to ascertain the intention of the parties to a contract. *Tong v. Borstad*, 231 N.W.2d 795, 800 (N.D.1975).

The testimony Madler challenges is not opinion or interpretation of state or federal law, nor is it evidence of a custom or usage which is contradictory to or inconsistent with state or federal law. The challenged testimony is more aptly characterized as the County and DOT representatives' understanding of the allocation of safety responsibilities, including custom and usage, under the various contractual provisions. This was relevant evidence of the intent of the parties to the various contracts. We conclude that the trial court did not err in admitting this testimony.

### III

Madler challenges numerous instructions given by the trial court, asserting that they did not adequately apprise the jury of the applicable law. Madler also asserts that the trial court erred in refusing to give several of Madler's requested instructions.

It is well established that jury instructions must fairly inform the jury of the applicable law. *Spieker v. Westgo, Inc.*, 479 N.W.2d 837, 840 (N.D.1992); *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 251 (N.D.1991). On appeal, we review the jury instructions in their entirety and, if the effect of the whole is to outline the issues in the case fairly and adequately, an isolated improper statement will not be considered prejudicial error. *Spieker v. Westgo, Inc., supra,* 479 N.W.2d at 840; *In re Estate of Flaherty*, 446 N.W.2d 760, 764 (N.D.1989). A trial court need not give instructions in the specific language requested by a party, as long as the instructions given fairly and adequately inform

the jury of the applicable law. *Spieker v. Westgo, Inc., supra,* 479 N.W.2d at 844; *Erickson v. Schwan*, 453 N.W.2d 765, 769 (N.D.1990).

Much of the basis for Madler's challenges to the instructions is premised upon his assertion that 23 C.F.R. § 635.105 creates a duty upon the County, as a matter of law, to provide for Madler's safety. We have rejected Madler's interpretation of the regulation and, consequently, we reject Madler's challenges to instructions which are premised upon his erroneous interpretation of that regulation.

It would serve no purpose to discuss each and every objection raised by Madler to the instructions. We have reviewed the instructions in their entirety and we conclude that the instructions given fairly and adequately informed the jury of the applicable law. Accordingly, we find no prejudicial error in the instructions.

We have reviewed the remaining issues raised by Madler on appeal and they do not affect our decision. The judgment of the district court is affirmed.

VANDE WALLE, C.J., and VERNON R. PEDERSON, Surrogate Judge and MESCHKE, J., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of RALPH J. ERICKSTAD, Surrogate Judge, disqualified, who was Chief Justice at the time this case was heard.

JOHNSON, J., who was a member of the Court at the time this case was heard, did not participate in this decision.

NEUMANN and SANDSTROM, JJ., not being members of the Court when this case was heard, did not participate in this decision.