**PENNZOIL COMPANY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES FIDELITY AND**
**GUARANTY COMPANY,**
**Defendant–Appellee.**

No. 94–1730.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1994.

Decided March 20, 1995.

zoil's claim on the ground that USF & G had no duty to indemnify Pennzoil under either the additional insured or the contractual liability provision of the comprehensive general liability policy USF & G issued to Sun Well Services, Inc. ("Sun Well"), another Pennzoil contractor. Without reaching the indemnity question, we conclude that USF & G breached its duty to defend Pennzoil and therefore reverse.

## I.

In the summer of 1987, Sun Well serviced a Pennzoil oil well in western North Dakota. Sun Well built a derrick over the well and used its workover rig to remove and stack all the tubing from the well. Sun Well then loaded sixty-foot sections of tubing onto its rig, where Northern Tubing Tester, Inc. ("Northern"), pressure tested each section for holes or leaks before Sun Well lowered the tubing back into the well. Pennzoil separately contracted with Northern for the testing services.

To perform the testing, Robert Olson, a Northern employee, stood on the Sun Well derrick sixty feet above the ground, placed a testing gun in the top of each sixty-foot section of tubing, and signaled another worker to inject water under high pressure into the tubing. While Northern was testing one section, water under high pressure escaped from a small hole in the tubing, hit Olson in the leg, and dislodged him from the derrick. Olson suffered a back injury when he was severely twisted in his safety harness.

Olson and his wife sued Pennzoil for damages. At the time of the accident, Pennzoil was an additional insured under Sun Well's liability policy issued by USF & G, and Sun Well had separately agreed to indemnify Pennzoil when an injury "occurs or exists on or is caused by [Sun Well]-owned ... equipment or premises." Pennzoil tendered defense of the Olson suit to USF & G, claiming coverage under USF & G's additional insured and contractual liability policy provisions. When USF & G denied coverage and refused to defend, Pennzoil brought a third-party complaint seeking indemnification from Sun Well. USF & G agreed to defend Sun

Randall Joseph Bakke, Bismarck, ND, argued, for appellant.

Frederick E. Whisenand, Jr., Williston, ND, argued, for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Pennzoil Company ("Pennzoil") brought this diversity action against United States Fidelity and Guaranty Company ("USF & G") seeking to recover Pennzoil's costs and attorney's fees in successfully defending a personal injury claim by a contractor's employee. The district court dismissed Penn-

Well against this claim but persisted in its refusal to defend Pennzoil.

Following discovery, Pennzoil moved for summary judgment dismissing Olson's claim. The district court granted this motion, and we affirmed. *Olson v. Pennzoil Co.,* 943 F.2d 881 (8th Cir.1991). Pennzoil then commenced this action against USF & G, seeking to recover its costs and attorney's fees in defending Olson's claim, plus its attorney's fees in prosecuting this action. After a short bench trial, the district court entered judgment for USF & G. Pennzoil appeals, raising issues under both the additional insured and contractual liability provisions of USF & G's policy. We address only one issue, breach of the duty to defend an additional insured. We apply the substantive law of North Dakota and review the district court's interpretation of that law *de novo. See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Under North Dakota law, we also construe USF & G's insurance policy *de novo. See Hart Constr. Co. v. American Family Mut. Ins. Co.,* 514 N.W.2d 384, 388 (N.D.1994).

## II.

■ USF & G's policy includes an endorsement naming Pennzoil as an additional insured, "but only with respect to liability arising out of operations performed for such insured by or on behalf of the named insured [Sun Well]." The policy provides that USF & G "shall have the right and duty to defend any suit against the Insured seeking damages" for bodily injury or property damage "to which this insurance applies ... even if any of the allegations of the suit are groundless, false or fraudulent." Pennzoil argues that the duty to defend is broader than the duty to indemnify, that there was at least some minimal causal relationship between Sun Well's operations at Pennzoil's well and Olson's injury, and therefore that USF & G owed Pennzoil a defense to Olson's suit.[1]

■ Under North Dakota law, the insurer has a duty to defend "[i]f the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy." *Hart Constr. Co.,* 514 N.W.2d at 389. The duty to defend is broader than the duty to indemnify. When coverage is in doubt, "the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy." *Kyllo v. Northland Chemical Co.,* 209 N.W.2d 629, 634 (N.D.1973).

Count I of Olson's complaint alleged that Pennzoil was negligent in ordering that Northern's testing be performed "above the slips," that is, above the floor of the drilling rig. Count II alleged that "the operations on the oil well workover rig operated by [Pennzoil] on the day [Olson] was injured was abnormally dangerous." After Pennzoil tendered defense of these claims, USF & G investigated and concluded that Sun Well's operation did not in any way cause this accident because, as USF & G's claims representative testified, "Sun Well was essentially sitting back waiting for Northern to complete their work." In other words, though USF & G concedes that the policy term "arising out of" must be broadly construed, it concluded there was no additional insured coverage, and therefore no duty to defend, because Olson's injury was caused entirely by operations performed for Pennzoil by Northern, not by operations performed for Pennzoil by Sun Well.

Even at the initial stages of the *Olson* suit, this was an exceedingly narrow view of USF & G's duty to defend its additional insured, Pennzoil. As drafted, the complaint focused only on Pennzoil's allegedly negligent control of an abnormally dangerous operation. However, Olson was injured standing on Sun Well's derrick performing testing on Pennzoil tubing being held by Sun Well's workover rig before Sun Well reinserted the tubing into the well. Although Pennzoil separately con-

---

1. USF & G argues that Pennzoil waived this issue in the district court. However, Pennzoil's complaint pleaded breach of the duty to defend. Moreover, Pennzoil is seeking only cost-of-defense damages, and therefore its claim must be analyzed under this aspect of North Dakota in-surance law. The record reveals that USF & G knew it might be breaching the duty to defend in refusing Pennzoil's tender of defense. We think this issue of law was adequately preserved; in any event, the district court committed plain error.

tracted with Northern to perform the testing, and Pennzoil owned the leaky tubing, it was at least in part a Sun Well operation, and if Olson's injury arose out of negligence attributable to Pennzoil from the Sun Well part of the total operation, USF & G owed Pennzoil duties to defend and, ultimately, to indemnify.

■■■ A significant problem for both Pennzoil and USF & G at this initial stage of the *Olson* litigation was that Olson's complaint did not plead Sun Well negligence or a Sun Well operation; indeed, the complaint did not mention Sun Well at all. The insurer's decision to defend should be made early in the complainant's suit, so that the defending insurer can exercise its right to control the litigation. Thus, the parameters of the duty to defend are governed by the allegations in the complaint against the insured. *See Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114, 118 (N.D.1978). North Dakota has rigorously applied that rule, rejecting the contention that "an insurer must investigate and ascertain facts independent of the pleadings before it resolves the question of its duty to defend." *National Farmers Union Prop. & Cas. Co. v. Kovash*, 452 N.W.2d 307, 308 (N.D.1990). However, insurers often independently investigate potential coverage questions in response to a tender of defense, as USF & G did here. Although there is no duty to investigate, the rule that has evolved in most jurisdictions is that, if the insurer acquires actual knowledge of additional facts that establish a reasonable possibility of coverage, the duty to defend is triggered, even if the insurer made an appropriate initial decision not to defend. *See SL Indus., Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1271–73 (1992); *see also Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 674–77, 575 N.E.2d 90, 92–95 (1991); *United States Fid. & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir.1978) (applying Minnesota law). We believe that North Dakota would similarly construe the duty to defend. As we said in construing North Dakota law in *First National Bank & Trust Co. of Williston v. St. Paul Fire & Marine Ins. Co.*, 971 F.2d 142, 144 (8th Cir.1992), "[t]his presumption [that information outside the underlying com-

plaint is not available to the insurer for purposes of determining the duty to defend] should not, however, relieve [the insurer] of an obligation to consider other information provided to it."

■■■ It is a close question whether USF & G's initial investigation of Pennzoil's tender of defense revealed a reasonable possibility that Olson's claim against Pennzoil might involve Sun Well's operation sufficiently to impose a duty to defend. But we need not answer that question, because Olson's lawsuit was not a static affair. In July 1989, after USF & G denied coverage and declined to defend, Pennzoil filed a third party complaint against Sun Well. That filing and subsequent discovery stimulated Olson to broaden his claims against Pennzoil to include an allegation that Pennzoil was vicariously liable to Olson because of *Sun Well's* abnormally dangerous operations. That is a covered claim under USF & G's additional insured provision. That claim was specifically addressed and rejected in the district court's December 3, 1990, Memorandum and Order granting summary judgment in favor of Pennzoil. Olson appealed, and this court also addressed the claim that Pennzoil was vicariously liable for Sun Well's negligence. *See* 943 F.2d at 884. Our conclusion that there was no evidence to support this claim is irrelevant—the duty to defend extends to groundless claims.

■■■ An insurer must have actual knowledge before matters outside the complainant's pleadings will trigger the duty to defend. Here, USF & G defended Sun Well against Pennzoil's third party claim. USF & G's attorney in this action represented Sun Well in the *Olson* lawsuit. The attorney letters in USF & G's claim file confirm that it was fully aware of what claims were being asserted in that suit. In these circumstances, it is appropriate to analyze USF & G's duty to defend on the basis of the claims Olson urged in responding to Pennzoil's motion for summary judgment, rather than the four corners of Olson's more limited initial complaint. Looking at the issue from this perspective, there can be no doubt that USF & G owed Pennzoil a duty to defend the

vicarious liability claim, and therefore the entire lawsuit. *See Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 537 (8th Cir. 1970).

■ An insurer that breaches the duty to defend is liable for the costs and expenses reasonably incurred by the insured in defending the suit. *See Prince v. Universal Underwriters Ins. Co.*, 143 N.W.2d 708, 715 (N.D.1966). In the district court, USF & G challenged the damages claimed by Pennzoil, and the district court did not reach damage issues. Accordingly, the judgment of the district court is reversed and the case is remanded with directions to determine the amount of damages to which Pennzoil is entitled on account of USF & G's breach of its duty to defend.